Good morning. You can have a seat please. Could we call the next case, Ozzie? Thank you, President Global Media. Will the attorneys presenting argument please approach, introduce yourselves, and if you would spell your last name for the record. Good morning, Your Honors. Jim Argyonis, A-R-G-I-O-N-I-S, on behalf of the appellant defendant Prometheus. Good morning, Your Honors. Rodney Smola, S-M-O-L-L-A, on behalf of the appellee Nicole Bateson. Mr. Argyonis, you're the appellant. We're going to do 15 minutes each side. And Mr. Argyonis, would you like to reserve some time for rebuttal? Yes, Your Honor. I'd say five minutes. Okay, that's fine. We're going to keep you pretty tight on the 15 each if you don't mind. The microphone is not for anything but recording, not amplification, so please keep your voices up. I don't think you'll have any trouble with that. And Mr. Argyonis, you have the floor. Thank you. Good morning, Your Honors, and may it please the Court. The article in question is simply not defamatory. It is truthful reporting on a matter of public concern. The article reported the identity of the culprit behind the Sony cyber attack was unknown and was still the subject of an ongoing FBI investigation. The entire point of the article was that because of the various possibilities of who was behind it, the Sony hack was a, quote, Hollywood whodunit. Looking at what the article did say, the article talked about the host of theories about who was behind the attack. It mentioned the potential of North Korea. It mentioned the potential of a current employee with administrative privileges. It mentioned the possibility of a former employee with administrative privileges. It also talked about it was potentially a combination of all of those possibilities. Did it not mention who was receiving? It did, Your Honor. And the only way it mentioned her is that her – looking at what the article did say, it mentioned that her name was used in an email that transmitted the hacked information. Is hacking and cyber attacking – are those criminal offenses under both statutes in the United States? They – yes, and they certainly can be. All right. In most situations, yes. Okay. But, again, the article contained quotations from more than one cyber expert talking about the various different theories of who was behind the attack. The article also said that the FBI was still looking into it. It was ongoing investigation, so we didn't know who was behind it. The FBI was still investigating. Looking at what the article did not say, Your Honors, the article did not say that Ms. Basile committed any criminal act. It did not say that she was a cyber hacker. It didn't even go as far to say that she was being investigated for possibly being the cyber hacker. But it did affiliate her or associate her with the possibility of the hack. Your Honor, even if it's read to bring her into the potential investigation, which I don't believe the article went that far. It merely said that her email was connected with the transmitted information, and she happened to – looking at her LinkedIn page, she happened to work at Sony at some point in time. It didn't go as far as to say she was the subject of the investigation. Does it have to say that a person is the subject of an investigation for a remark to be defamatory? My point is, Your Honor, if it's – Do you want to answer that question or no? It does not, but it needs to in some – fall within one of the per se categories, number one, if you're going to – Criminal activity, for example, is one of the four. Correct. And this did not impute any crime to her. This is along the lines of the case, Your Honor, of the Capotes case, where the article there talked about the Stroger Hospital doctor saying that he's receiving a six-figure salary for no work. There were other statements about him still being on the radar of the inspector general. And the court there said that's not imputing a crime because there's this long line of cases that say, even if they're a subject of an investigation, even if they've been interviewed by the police, even if they've been charged with a crime, that is not defamatory on its face. And it doesn't fall within the category of imputing a crime. How about prejudicing her in her profession? How about that? That's the other – so the Capotes case is instructive on that, too. In there, even though they were saying this doctor was getting a six-figure salary without doing any work, the court specifically said that did not impute any inability in his profession. Here, Ms. Basile was a payroll accountant. Nothing within being charged as a – even if – nothing regarding a hack imputed anything about her abilities as a payroll accountant. Even if it – Did it have to pertain specifically to the role that she – or the position that she held within the company? I mean, just because it didn't say anything about her being an accountant, it didn't associate her with the hack. The cases are pretty clear that it has to relate maybe not specifically to that exact task, but somehow the role that she does in that field. There's cases out there about someone accessing bad things on the Internet, and they reported on that. And I forgot what the role of the person was, but they said that didn't implicate that person's ability in their job. It may have implicated some kind of a personal integrity, but the court said that's not enough. So the person accessing the Internet information at work, they said may have implicated their personal integrity, but didn't cross the line and didn't fall into the per se category about an inability in a profession. Same thing with Kapotes. The court there held – Are you really arguing that the complaints don't state a cause of action when you say that there's no defamation? Correct, Your Honor. Didn't you actually have a 615 motion that was denied? We did, Your Honor. And didn't that motion get denied? I'm sorry. And you never appealed it? We attempted to take it up on a 308. Okay. All right. You attempted. And the judge refused us the ability to get before you. Is there anything, though, that couldn't have – or would have prevented you from asking for a 304A language? I'm not sure that there was no avenue for you to appeal this dismissal. Well, Your Honor, it was the particularities of the way Judge Gillespie wants us to brief and forced us to brief the motions. He does not allow a combined motion. When we were in the federal court, we had combined the arguments. He does not want a 619.1. He wanted the 615. Venue first we did. Then he wanted the 615. Then he wanted the 619. We attempted a 308 appeal. He denied it. Once we got to the 619 motion on the anti-slap, that is when we went the 306 Avenue route that gave this body the ability to grant our petition for leave. Okay. So, again, Your Honors, I think there's a long line of cases that the court just ignored about a party being a part of an investigation. And at best, that is what this article had mentioned. Counsel, can you help me out with this? Sure. I shouldn't know this, but is the allegation in the complaint that these statements were false? I know we haven't tried this case yet. We're at the pleading stage. But is the allegation that this stuff in here was not true? They would need to – In other words, it says – Yes. Is the allegation in the complaint that that's false? No, that's conceded, that the e-mail had the name on it. Okay. But what they're saying is false, and I'll certainly let them try to – So it would be – is there a difference between them saying, authorities within the FBI confirm that they are looking very hard at an individual named Nicole Basile? That's not what this says. That would be one thing, that we have a source within the investigating body that says, we are looking at this person, versus not saying that, but just saying, we're kind of doing our own research here. We're looking at these stolen files, and they've got someone's name on it, and her name is like Nicole Basile. Are those two different things, or are those – because the one is saying the FBI is the one identifying them. Correct. And we're maybe outing them, we're revealing it, but we're just saying what somebody else with authority to say something has said, versus them putting the pieces together, too. The – I think the – I think both of them are categories where it wouldn't be defamation. I think the one that Your Honor has put together regarding the authority looking into it, there's a line of cases that says if there's an ongoing investigation, that that's another avenue to say that you just didn't defame the person, you didn't accuse them of the crime. And then there's – So our case is a little bit stronger language than that, right? This is the – the Hollywood Reporter, was it? Yes. This is the Hollywood Reporter kind of connecting the dots itself for the reader. Well, what the Hollywood Reporter said – everything they said was truthful, Your Honor. That's first and foremost. What they said is that her email – her name was on the email that transmitted the information, and that was truthful. Then they also said, looking at her LinkedIn page, she had worked at Sony Studios. And if – by Your Honor suggesting that that's connecting the dots, that she's one of the potentials of the myriad of potentials that this article went into about North Korea, about a former employee, about a current employee, then at best that is placing her within the mix of an investigation that's ongoing. And certainly to Your Honor's point, it's an ongoing FBI investigation, and it's leaving the whodunit to that FBI body, to the government body. And it falls within those cases that say that that's just not defamation. So, Your Honors, that's the – I think Justice McBride's question was basically, is the question of whether it was defamatory per se or per quod properly before us right now? I mean, that's a 2615 usually, right? Yes. I know you – I know you filed a 2615. I know it was denied. I know you tried to go up and you weren't allowed to. I get all that. But the fact is it's not before us, right? The 2615 ruling is not before us, is it? It's before you, Your Honors, on two ways. Okay. As part of the anti-SLAPP motion – As part of the analysis of the SLAPP motion? Correct. Because the – that's number one. The first way it's before Your Honors is as part of that analysis. There's a two-step. I think we've met the first step, and I don't think that's contested. Second step is the plaintiff needs to demonstrate a prima facie case. And what we're saying, they cannot do that because of all these arguments that were, in essence, the same arguments in the 615. The second way it's before Your Honors is on a 306 appeal, interlocutory appeal, it brings up the whole record and all interlocutory orders in a record may be considered. And that's from an interest of Ashley 212, ILAP 3rd, 849, 1991 case. I think we may be in your time. Okay. So why don't we give you five minutes for rebuttal. Thank you. Thank you, Your Honors. We'll see you soon. Appreciate it. Good morning again, and thank you, Your Honors. Rodney Smoll on behalf of Nicole Basil. There are a lot of procedural and substantive issues before the Court, and I'd like to begin with the procedural colloquy that we just heard. We challenge the very premise that this is a proper 306A9 appeal. That allows this Court, in its discretion, to grant an appeal from the denial of a motion to dismiss under the Illinois Citizen Participation Act. But Prometheus never moved to dismiss under the Illinois Citizen Participation Act. In fact, it ran away from the Illinois Citizen Participation Act because it knew there was no plausible claim under that law. The Illinois Supreme Court's decision in the Sandholm case and this Court's decision in the Ryan Fox case make it clear that there must be petitioning activity. And a routine media report doesn't qualify, nor does a run-of-the-mill defamation suit be a petitioning sort of retribution of the kind that triggers the act. So instead... Did you file originally a motion to dismiss because you argued that this really wasn't a 306A9? We did, Your Honor. And that was denied, I take it? Yes, Your Honor. Not all of the same division, you know, entered? But I think it's still within the discretion of the Court to ask whether it was improvidently granted. And, Your Honor, your line of questioning to my friend, Mr. Argeones, I think reveals a great deal. They sought dismissal on their attacks on the pleadings early on in the case, and they lost. They lost on all of these issues of defamatory meaning, libel per se, libel per quad, false life, and so on. They then, in what we think was kind of a final effort, tried to get the Court to look at those same issues again by invoking the California Anti-SLAPP law. And the way Judge Gillespie handled the matter is he said, Well, you didn't ask me for dismissal under the Illinois Act, but I'm going to be very careful. I'm going to do a conflicts briefing analysis over whether I should import the California Act. And the judge then says, using ordinary choice of law and reasoning, there's not a conflict. Had you invoked the Illinois Act, clearly you would have been disqualified. You know this is not the kind of case that triggers it. I'll go through the exercise of looking at the California Anti-SLAPP Act, which is simply a do-over of the same substantive grounds before, with one exception, the public figure issue, which I will get to. And he says, well, you would lose there, because all the California Act gives you is a front-end test of your prima facie case. And there is a prima facie case here. It's our submission that it's incoherent to treat that as the denial of a motion under the Citizens Participation Act. The Illinois Citizens Participation Act. The Illinois Citizens Participation Act. And, indeed, if you look at the transcript of that hearing, which is on February 25th, it's page 608 of the appendix. At the very end, Ms. Ross, who was representing Prometheus, after the judges ruled, I was silent. She said, Your Honor, if I can just clarify, is your ruling based on the Illinois Citizens Participation Act? And the judge says, no. I said it doesn't apply. I made a conflicts analysis and said there would not be any difference in outcomes, and I dismiss. And so we don't think there's really a threshold basis for the appeal. But let's assume that I'm wrong. Does it make sense for Illinois to import the California Anti-SLAPP Act in a case like this as just an ordinary choice of law analysis? The other side in its papers somewhat belittles our substance versus procedure distinction. We think that's fundamental choice of law analysis. It's a fundamental axiom that Illinois courts and forum courts around the United States follow their own procedural rules but often will import the substantive law of a sister state. Here, the test, it's not, we point out that it's part of the California Civil Procedure Code, but that's a surface argument. The test is, does the California Anti-SLAPP Act create legal privileges or immunities, causes of action, defenses, actual legal load-bearing elements, or does it simply order the way in which California litigants may get an early test of a case involving the exercise of free speech? And it's plain that it's the second. And so just applying ordinary choice of law principles, it's incoherent to us that Illinois would borrow this type of SLAPP statute. But even if I'm wrong there, what would you get from the invocation of the California Anti-SLAPP Act? Just the opportunity to show that you've got a plausible prima facie case, which we did over and over again. Now, in their second effort, when they invoked the California SLAPP Act, for the first time they added a new challenge to our case. That is the argument that Nicole Basil is a public figure, and therefore we must prove actual malice, and therefore they claim the case should be dismissed. That's wrong on multiple levels. First of all, it's inconceivable that Nicole Basil is a public figure. Illinois follows the Waldbaum test from the D.C. Court of Appeals. It's a three-part test. And one of the key elements is the plaintiff must voluntarily inject themselves into a public controversy to try to influence that controversy. She was the victim of identity theft. Her name was hijacked. No one had heard of her until the defamatory article. And Illinois courts and the U.S. Supreme Court and courts around the country say you cannot, through your act of defamation, turn a person into a public figure. Go ahead, please. Could you comment very briefly on the innocent construction rule? Yes, Your Honor. First of all, we think you can completely avoid that because we have a very solid liable per quod claim. Now, the distinction between liable per se, liable per quod, reasonable innocent construction, and ordinary construction are complicated. And in the Illinois Supreme Court Middleman v. Woodhouse case, Illinois Supreme Court, probably the best case for the Court to review if it wants to look at all of these documents. It admits this is a confusing body of law. The Court describes it as a morass. It's not harmonious. But the core of Middleman, which we really commend to the Court, is a basic bargain. If you plead special damages, then you're relieved of the burden of the innocent construction rule. And if you don't, you have the higher standard. There's a beautiful logic to that. You have to prove the slightly higher standard of the reasonable innocent construction rule if you don't plead special damages. We have. We pled them sufficiently under Illinois law. We then back that up. Yes, Your Honor. So they argue that there is a lack of specificity, and therefore the argument is insufficient. And in our briefing, Your Honor, we cite many, many cases in which allegations indistinguishable from ours were held to satisfy the special damages requirement. That's really a pleading matter. And it's a pleading matter, Your Honor, absolutely. And as a lifelong Chicago sports fan, we commend the Scottie Pippen case in which the Court said he lost business opportunities because of the defamation. And the Court said that's all he must do at the pleading stage. And it's our submission that that's all we must do. Now, I don't want to run away from the heart of the substantive argument that the other side has made, even though we don't think the Court needs to get there. We think that they've got a very sanitized version of the way ordinary readers would read this article. And even when we're dealing with the reasonable innocent construction doctrine, so even if you treat this as a defamation per se case, first of all, on the per se categories, as Your Honor was talking about, you can focus on the crime per se category, but that's really not the easy one. The easy path is, is this the kind of statement that would tend to impugn your integrity as an employee? That's the formal test. Of course it is. Would it tend to damage you in your profession? Of course it would. It's right down the middle of that. And so I do invite Your Honors to read the article, and I strongly commend Judge Gillespie's analysis, not in the February 25th hearing, which we think was solid, but in the earlier hearing from August 29th the year before, the first time he dealt with the innocent construction issue, in which he follows the roadmap. He says, look, you look at the headline, you look at the Ts, you look at the entire way this is structured, it is who is responsible for this. And it's not making North Korea a plausible equal player. It is communicating, that's what everybody thought at first, but now it points to an inside job. And it's a Hollywood whodunit. Counsel, if somebody puts together pieces of information that are true and you admit that they're true, do you have a definition? Absolutely, Your Honor. If all of the different pieces make the larger communication that is the heart and soul of what is being communicated, this person is the leaker. This person is the thief. This person has done it. That is actionable. And a decision from this court, the Burkholz decision, refutes one of their central claims. It doesn't matter if it's true, Your Honor. Constantly defamation cases are based on the implication that A is guilty, in which there are a number of constituent pieces put together to point to the guilt. But just think about it. If you, as Judge Gillespie said, if you say there's a mystery, but we think it's an inside job, and then you name one person, Nicole Basil, and you then say, and she's a former employee of Sony, and by the way, our complaint takes issue with that. We say she was never actually a former employer of Sony. She was an employer for a production company. And then, remember, because they used the California anti-slap law, the court below was entitled to see our other evidentiary submissions, because discovery had been advanced. And the e-mails in this case are devastating to the other side. The e-mails, which are appropriately part of the California slap vehicle, show the editors and show the reporters saying, can we use her name? Can we use her name? We haven't reached her. What if somebody hijacked her? Maybe we should just say an employee, not use her name. Maybe we should soften the language and say someone who claimed to be Nicole Basil. They end up with a final draft that, as Judge Gillespie put it, it was the punchline. He said they couldn't resist. And the impression you get, the only reasonable construction you get is, guess what? It wasn't North Korea. It was Nicole Basil. And these are all the pieces of it that point to Nicole Basil. And it's our position that even if you go that far and feel on the merits, you're going to, at this interlocutory stage, say the court below was right. This is actionable. Let's let a jury decide if that's how it will be construed, that we've got a solid case and it's a construction. I do want to very briefly. We're at the wrap-up point. Okay. In 30 seconds. Yeah, 30 seconds. Don't ignore our false light claim. And the elements of false light are distinct from the elements of defamation. And there are, we cite to the court cases that say you can have a false light claim even when you fail under, let's say, a robber per quad claim, and we think this is tailor-made as false light. Thank you, Your Honors. Okay. Thank you, Counsel. Mr. Argeones? Thank you, Your Honor. I was kind of surprised that we didn't hear more about the false light claim myself. Why is the false light claim not a state claim? The false light claim, Judge, to the extent that plaintiff is relying on the same basis as the defamation per se claim, it rises and falls on that claim. But they're not the same. The same way. If they're adding, they've admitted that on the false light claim and the per quad claim, they have no extrinsic facts. So what they're trying to do is to use this more obscure second route theory of per quad claim. If they're relying on that for their false light claim, they need to prove malice, which we've argued in here and set forth why they don't do that, and special damages. Again, getting back to the point that the special damages are not adequately pled where you don't identify the specific employers. The reason for that, they can't just identify generic categories. Malice for a process. Yes, for a false light claim that relies on something other than the same basis for a per se claim. Then they would have to demonstrate malice and special damages. So they cannot do that. So that's why the false light claim falls by the wayside to the extent they're trying to rely on something other than a per se allegation, which I don't believe they have done, Your Honors. But getting back to the innocent construction rule that Justice McBride brought up, what plaintiff and what the circuit court did, they're inviting you to insinuation and innuendo about the true facts that were stated here. There's no balancing of the reasonable constructions, which is what you're being invited to do. If there's a reasonable construction, that is the one that must be applied. And the circuit court didn't do that. They added some innuendo. They're pointing here. They're saying it's her. The article itself says it points to an area. It doesn't say it was an area. And everywhere that the judge in his transcript said here's what it says, you go back to the article and there's some language that says likely, there's some language that says may point to, along with the myriad of other possibilities that were stated. And certainly if this article had pointed definitively to the plaintiff, why did it need to discuss all the myriad of possibilities? Why did it need to say that there was an FBI investigation that was ongoing? That would have been the whole tenor of the argument, would have been here she is. And this is the culprit here. The article did not go there. At best, they have an interpretation that she's part of an ongoing investigation by the FBI. And there's a long line of cases here, both that that's an innocent construction that simply cannot state a claim for defamation. Your Honors, and this is exactly the type of case, the chilling effect. Now, if this case proceeds, there's going to be a lot of time and discovery in the trial. And this is the exact chilling effect on the First Amendment that all of the case law that the circuit court simply ignored was meant to avoid. The cases, the innocent construction rule is there to make certain that public discussion on a public concern issue is not chilled in any way. And that's exactly what's happening here. They reported truthfully, as Your Honor pointed out, everything that was said was truthful. And yet they're getting bogged down in an expensive lawsuit because the circuit court ignored both the per se categories, ignored the innocent construction rule, and ignored the requirement for special damages here. We'd ask that Your Honors remand this down, that the complaint be dismissed. Thank you for your time. Thank you, Counsel. Thank you both for your presentations today and for your briefs. They were excellent. It's a difficult case, and we're going to stand adjourned for now. Thank you.